UNITED STATES of America,
Plaintiff–Appellee,

v.

**Adedayo Omokayode AKINTOBI and Olugbenga Olusoji Ani, Defendants–Appellants.**

Nos. 97–50452, 97–50453.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1998.

Decided Oct. 22, 1998.

---

Michael S. Evans, Torrance, California, for defendants-appellants.

Daniel J. O'Brien, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: FLETCHER, BOOCHEVER, and THOMPSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Adedayo Omokayode Akintobi (97–50452) and Olugbenga Olusoji Ani (97–50453) appeal their convictions, pursuant to conditional guilty pleas, for money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

## I. Facts

Appellants Akintobi and Ani do not dispute the conduct alleged in the Second Superceding Indictment, but rather whether that conduct constitutes money laundering.

Akintobi and Ani purchased credit cards stolen from the mails by letter carriers. Akintobi and Ani drew cash advances and made purchases on the stolen credit cards until the available credit was depleted. Then, using the stolen credit cards and illegally obtained consumer credit information on the named cardholders, Akintobi and Ani opened checking accounts in the cardholders' names. Soon thereafter, Akintobi and Ani withdrew the money used to open those accounts, leaving zero balances. In some instances, the checking accounts were closed by the financial institution.

Akintobi and Ani then used checks drawn on the closed or empty checking accounts to pay down the balances on the credit card accounts.[1] As is their custom, the credit card companies immediately honored the checks, enabling Akintobi and Ani once again to deplete the available credit through further spending and cash advances before the credit card companies discovered that the checks were drawn against insufficient funds. Checks used to extend the fraud in this fashion are termed "booster" checks.

The Second Superceding Indictment charged money laundering in counts six through nine:

On or about the dates set forth below, in the Central District of California and elsewhere, defendants ADEDAYO OMOKAYODE AKINTOBI, OLUGBENGA OLUSOJI ANI and others, knowingly conducted and attempted to conduct the following financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is, theft of mail, mail fraud and bank fraud knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and with the intent to promote the carrying on of specified unlawful activity, that is, fraudulent use of access devices.

The indictment alleged four transactions, each involving the deposit of a stolen or

---

1. The record discloses instances in which credit card convenience checks, or blank starter checks stolen from the mails, were used instead.

fraudulently obtained check to the account of a stolen credit card.

Akintobi and Ani filed a motion to dismiss the money laundering counts claiming the indictment did not properly charge the crime of money laundering because the booster checks were worthless and thus could not constitute "proceeds" of illegal activity. The district court denied the motion.

Pursuant to a written plea agreement, Akintobi pled guilty to counts one (conspiracy to possess stolen mail, fraudulently use access devices, and commit money laundering), two (possession of stolen mail), and six (money laundering). Similarly, Ani pled guilty to counts one (conspiracy to possess stolen mail, fraudulently use access devices, and commit money laundering), four (possession of stolen mail), and eight (money laundering). Each reserved the right to appeal the money laundering count.

## II. Discussion

■ We review *de novo* the denial of a motion to dismiss based upon insufficiency of the indictment. *United States v. Blinder,* 10 F.3d 1468, 1471 (9th Cir.1993).

To prove money laundering in violation of § 1956(a)(1)(A)(i), "the government must establish that the defendant (1) was involved in an actual or attempted financial transaction, (2) which the defendant then knew involved the proceeds of unlawful activity, (3) with the intent to promote specified unlawful activity." *United States v. Estacio,* 64 F.3d 477, 480 (9th Cir.1995). Bank fraud and credit card (access device) fraud are both "specified unlawful activity" for purposes of § 1956. 18 U.S.C. §§ 1956(c)(7)(A) & 1961(1).

Akintobi and Ani argue that because the "booster" checks were valueless, no "proceeds" were involved in the transactions described in the indictment. Further, they reason that although valuable proceeds were generated after the credit card companies accepted the bogus checks, the indictment is deficient because it fails to allege subsequent transactions laundering those proceeds. *See United States v. Savage,* 67 F.3d 1435, 1441 (9th Cir.1995) (laundered "proceeds" must be obtained from *prior,* separate criminal activity).

### A. The definition of "proceeds"

■ The term "proceeds" is not defined in the money laundering statute. In the absence of a statutory definition, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). Webster's defines "proceeds" as "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue; the total amount brought in; yield, returns." Webster's Third New International Dictionary, 1807 (1981). Similarly, "proceed" is defined as "that which proceeds, is derived, or results from something; that which is obtained or gained by any transaction; produce, outcome, profit. Now almost always in *pl.* proceeds." The Compact Edition of the Oxford English Dictionary 2311 (1971 & Supp.1985). Thus, while the term "proceeds" may refer to something of value, the term has the broader meaning of "that which is obtained ... by any transaction." In this latter sense, checks stolen from the mail or obtained by fraud are proceeds of the criminal enterprise.

The term "proceeds" is used in the statute to denote property that is derived from an unlawful activity and is involved in a subsequent financial transaction.[2] Typically, that property is cash or money in some other

---

2. The money laundering statute provides:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

(ii)·with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater,

form. In this case, however, the property was illegally obtained checks, which were involved in subsequent financial transactions when they were sent to credit card companies to pay down the balances on credit card accounts.

There can be no question that personal bank checks that were stolen from the mails are the proceeds of the crime of mail theft. Likewise, blank starter checks that were obtained through bank fraud, i.e., opening an account in an assumed name, are the proceeds of the crime of bank fraud. The question is whether such checks, which ultimately proved worthless because the accounts backing them up were either empty or closed, were "proceeds" that were "involved" in a "financial transaction" when Akintobi and Ani sent them to the credit card companies where their face amounts were credited to the accounts of the stolen credit cards.

The money laundering statute aims at actual or attempted "financial transaction[s] which in fact involve[ ] the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1). The statute defines the term "financial transaction":

(c) As used in this section—

* * * *

(4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) *involving one or more monetary instruments,* or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

18 U.S.C. § 1956(c)(4) (emphasis added). Thus, a personal check falls within the purview of the statute because it is a monetary instrument.

Akintobi and Ani argue that the checks cannot be proceeds because they were worthless. Initially we note that the statute does not require that the proceeds have intrinsic value. The blank checks were the yield or return of criminal activity. Moreover, the

checks were *not* worthless because each check had the proven capacity to fool the credit card companies into issuing thousands of dollars worth of credit, and enabled Akintobi and Ani then to extract that valuable credit through cash advances and purchases. It was, after all, that value which led Akintobi and Ani to steal or commit fraud to obtain the checks in the first instance.

This court held in *Estacio* that proceeds need not be tangible or actual assets. *Estacio* involved a check kiting scheme, in which two car dealerships swapped increasingly large checks of similar value back and forth for months, creating a transient, artificial credit they both could draw upon. The kiting scheme fell apart when one dealership's bank refused to honor a check. Estacio, who worked for one of the dealerships, was charged with money laundering. He argued that the government failed to show that he laundered "proceeds" because "proceeds" must always be money or some tangible asset whereas the kiting scheme did not involve real money. 64 F.3d at 479–80. This court held that "[a] fraudulently obtained line of credit, which results in an artificially inflated bank balance, is within the scope of the term 'proceeds' as used in § 1956." *Id.* at 480.

Thus, fraudulently created credit can be proceeds. The government may charge money laundering when such proceeds are made the subject of a subsequent financial transaction. In *Estacio,* the money laundering was the depositing of checks that represented the proceeds of earlier, illegal check kites. In this case, the money laundering was the submission, to the credit card companies, of checks which were the proceeds of earlier thefts or frauds. Those checks were equivalent to fraudulently obtained lines of credit because they were capable of inducing the companies to renew the available credit balances of the illegally obtained credit card accounts.

While this particular type of transaction may not fit the common understanding of what is money laundering, the statute reaches a broad range of financial activities. Thus, § 1956(a)(1)(B)(i) proscribes what is commonly understood as money laundering,

or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1).

which is the conducting of financial transactions involving the proceeds of unlawful activity "knowing that the transaction is designed ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Similarly, § 1956(a)(1)(B)(ii) is aimed at such transactions that are designed to "avoid a transaction reporting requirement under State or Federal law." In contrast, Akintobi and Ani were charged under § 1956(a)(1)(A)(i), which proscribes conducting financial transactions involving the proceeds of unlawful activity "with the intent to promote the carrying on of specified unlawful activity." Credit card fraud is such a "specified unlawful activity." 18 U.S.C. § 1961(1). Because, as discussed *supra*, the checks were proceeds of unlawful activity and were intentionally used to promote credit card fraud, the district court's denial of the appellants' motion to dismiss the money laundering counts is affirmed.

AFFIRMED.