**UNITED STATES of America,
Plaintiff,**

v.

**REAL PROPERTY IDENTIFIED AS PARCEL 03179–005R, Legal Description Sec 19 TWN 9, RNG 10, Port St. Joe, Florida, with all Appurtenances and Attachments Thereon, et. al., Defendants.**

**Civil Action No. 01–706 (RBW).**

United States District Court,
District of Columbia.

April 2, 2004.

Linda Otani McKinney, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Joel William Anders, for Defendants.

Denyse Sabagh, Duane Morris, Harvey Joseph Volzer, Shaughnessy, Volzer & Gagner, Washington, DC, for Claimants.

Kenneth Jeffry Loewinger, Loewinger & Brand, P.L.L.C., Washington, DC, for Defendants/Claimants.

### *MEMORANDUM OPINION*

WALTON, District Judge.

Currently before the Court is the government's renewed motion for summary judgment[1] regarding the civil forfeiture of

---

1. The pleading is entitled "Plaintiff's Addi-      tional Memorandum of Points and Authorities

a defendant aircraft. For the reasons set forth below, the Court concludes that the aircraft is subject to forfeiture.

## I. Factual Background

The facts that resulted in the filing of this forfeiture proceeding are thoroughly set forth in the Court's October 21, 2003, Memorandum Opinion, and will not be recounted here again. *See United States v. Real Property Identified As: Parcel 03179–005R,* 287 F.Supp.2d 45, 62 (D.D.C. 2003). In its prior memorandum opinion, the Court determined that the defendant real property, identified as Parcel 03179–005R, Legal Description Sec 19 TWN 9, RNG 10, Port St. Joe, Florida, was subject to forfeiture pursuant to the Civil Asset Forfeiture Reform Act of 2000, ("CAF-RA"), 18 U.S.C. § 981 (2000), and granted the government's motion for summary judgment as it pertained to that property. However, the Court denied both the government's and the defendants' motions for summary judgment as to those aspects of the motions that related to the defendant 1977 Piper Aztec Aircraft.

The facts regarding the defendant aircraft are not in serious dispute. Defendant Kinley Howard was found guilty of mail and wire fraud for conduct he engaged in regarding his administration of the estate of his deceased aunt, Mildred Powell, who died on July 15, 1996. Defendant's fraudulent activity occurred between approximately December, 1996 and May, 2000. The aircraft that is at issue was fully paid for by 1995. Verified Complaint for Forfeiture *In Rem* ("Compl.") ¶ 22; *see also* Pl.'s Supp. Mem. at 2[2] ("[C]laimant had purchased the defendant aircraft prior to his fraudulent activities giving rise to this case. . . ."). In 1991, Dr.

Howard used the aircraft, "along with other assets, as collateral for the consolidation of numerous loans he had previously obtained from the First National Bank of Northwest Florida (hereafter 'FNB')." *Id.* at 3 (citation omitted). As a result, "FNB held a lien on the defendant aircraft for its full value." *Id.* In September 1999, when FNB sought payment in full from Dr. Howard for several loans he had obtained from the bank, Dr. Howard obtained a second mortgage on the defendant real property in the amount of $300,000 from Citizens Federal Savings Bank of Port St. Joe, located in Port St. Joe, Florida. Dr. Howard then used the funds from this second mortgage to pay the remaining balance owing on the loans he had obtained from FNB in the amount of $268,162.57. *Id.* at 3–4. "Upon receipt of that payment, FNB released its liens, in May 2000, on the full value of the defendant aircraft, as well as the other assets used as collateral for the consolidated loans." *Id.* at 4 (citation omitted). The government posits that because the "lien on the defendant aircraft was satisfied with proceeds traceable to claimant's fraudulent activities[,]" *id.* at 3, the aircraft is subject to forfeiture. The Court agrees.

## II. Analysis

### A. Standard of Review

"When a motion for summary judgment is made and supported as provided in [Federal Rule of Civil Procedure 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The

in Support of Motion for Summary Judgment with Respect to Defendant 1977 Piper Aztec Aircraft."

**2.** References to "Pl.'s Supp. Mem." are to the Plaintiff's Additional Memorandum of Points and Authorities in Support of Motion for Summary Judgment with Respect to Defendant 1977 Piper Aztec Aircraft.

Court must grant the motion for summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## B. Whether the Defendant Aircraft is Subject to Forfeiture

The sole legal issue before the Court is whether the defendant aircraft, which was paid for prior to the commission of Dr. Howard's fraudulent scheme, but was then used as collateral for loans that caused a lien to be placed on the aircraft, is subject to forfeiture because the lien on the aircraft was released through the use of funds that were acquired as a result of Dr. Howard's illegal activities.[3] Neither party has directed the Court to any case authority that precisely answers this question. The government contends, however, that it is "unrealistic[ ]" for the claimants to "expect the government to provide support for its theory of forfeiture of the defendant aircraft by citing a case with facts identical to the facts presented here." Pl.'s Supp. Mem. at 5. And, while the claimants note that the government has not cited a case directly analogous to the current situation, they have not cited any case directly on point either.

### 1. Whether Forfeiture is Proper Pursuant to 18 U.S.C. § 981(a)(1)(A)

Pursuant to 18 U.S.C. § 981(a)(1)(A), the following "is subject to forfeiture to the United States: Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960[4] of this title, or any property traceable to such property." This provision only permits the forfeiture of money or property related to a violation of the money laundering statutes.[5] Thus, to establish forfeiture pursuant to this pro-

---

**3.** In their limited response in opposition to the government's motion, the claimants attempt to re-argue issues that were already decided by the Court in its prior opinion, specifically, that the CAFRA should not be held to apply retroactively and that Mrs. Howard, Dr. Howard's wife, is an innocent owner of the property at issue. The claimants have now submitted an affidavit from Mrs. Howard on this latter position. However, this submission is too little to late because the Court explicitly concluded that the innocent owner defense was not available to Mrs. Howard because she had failed to submit any evidence or affidavit concerning her eligibility for the defense, and thus the Court treated the argument made by the government that Mrs. Howard and Kinco Aviation, Dr. Howard's company are not innocent owners, as conceded. *United States v. Real Property Identified As: Parcel 03179–005R,* 287 F.Supp.2d 45, 62 (D.D.C.2003). The Court in no way intended its request for supplemental pleadings concerning the defendant aircraft to be an invitation to the claimants to reargue positions already considered and rejected by the Court.

**4.** The government has never asserted that the property would be subject to forfeiture pursuant to 18 U.S.C. § 1960.

**5.** The fact that the Court vacated Dr. Howard's money laundering conviction is irrelevant to whether or not the property could be subject to forfeiture for a violation of the money laundering laws. *See United States v. One "Piper" Aztec "F" De Luxe Model 250 PA 23 Aircraft,* 321 F.3d 355, 360 (3d Cir.2003) ("[T]he absence of a criminal conviction is irrelevant in a civil forfeiture proceeding, which is directed against the property, not the owner.") (citation omitted); *United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th Street, New York, New York,* 901 F.2d 288, 292 (2d Cir. 1990) (rejecting claimant's argument that "his state conviction [did] not support forfeiture because he ha[d] filed a notice of appeal from that conviction.... [E]ven if [the claimant's] state conviction were overturned, civil forfeiture of the defendant property would still be warranted.") (citations omitted).

vision, the government must establish that the Piper aircraft was involved in one of Dr. Howard's money laundering transactions. *See United States v. Iacaboni*, 221 F.Supp.2d 104, 111 (D.Mass.2002) (noting that under 18 U.S.C. § 982(a)(1), only "property that was . . . 'involved in' defendant's money laundering in violation of [§ ] 1956 [would] . . . be subject to forfeiture.").

Pursuant to 18 U.S.C. § 1956, there are two possible avenues for finding that the aircraft was involved in a money laundering offense. The first would be if Dr. Howard knew the "property involved in a financial transaction represent[ed] the proceeds of some form of unlawful activity . . . [,]" and with that knowledge Dr. Howard used the property to "conduct or [to] attempt to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity. . . ." 18 U.S.C. § 1956(a)(1); *see also Iacaboni*, 221 F.Supp.2d at 112 ("The phrase 'proceeds' of some form of unlawful activity . . . has widely been interpreted to include any money instrument *that is obtained as the result of an illegal activity*, or the 'total revenue' that is obtained from an illegal enterprise.") (citing *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996); *United States v. Akintobi*, 159 F.3d 401, 403 (9th Cir.1998)) (emphasis added). Second, if Dr. Howard used the aircraft to "conduct or [to] attempt[ ] to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity. . . ." 18 U.S.C. § 1956(a)(3). Such a finding based on this second approach is dependent on the government demonstrating that the defendant . . . inten[ded] to "carry[ ] on specified unlawful activity;" or "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity[.]" *Id.* § 1956(a)(3)(A), (B).

The government argues that because the lien on the aircraft was released due to the payment of funds obtained from a second mortgage that was secured by the defendant real estate, which the Court has already concluded is subject to forfeiture because it had been acquired with funds obtained by Dr. Howard through his illegal activity, the aircraft is also subject to forfeiture. Clearly, as found by the Court previously, the house was purchased with illegally obtained funds. *See Real Property Identified As: Parcel 03179–005R*, 287 F.Supp.2d at 63–64 ("The[ ] facts, in conjunction with the overwhelming evidence of Dr. Howard's guilt presented at his criminal trial, conclusively demonstrates that Dr. Howard knowingly orchestrated a fraudulent scheme to obtain the proceeds of Mildred Powell's estate. And, he then used those funds to purchase the St. Joe, Florida real estate."). Specifically, there was ample evidence that the defendant fraudulently obtained control of his deceased aunt's assets; that he engaged in a series of bank and wire transfers in which he transferred funds from his deceased's aunt's accounts into his personal accounts and otherwise deposited into his accounts assets belonging to the estate, and that, on December 29, 1997, Dr. Howard used those funds to purchase the St. Joe, Florida real estate. *See* Verified Complaint for Forfeiture *In Rem* ("Compl.") ¶¶ 9–18. Thus, it has been clearly established that Dr. Howard conducted a financial transaction that involved the aircraft with the proceeds of specified unlawful activity, *i.e.,* the payment of the loans that released the lien on the aircraft with funds obtained from the second mortgage secured by the St. Joe, Florida real estate.

"The heart of an act of money laundering is a transaction involving illegal proceeds." *Iacaboni*, 221 F.Supp.2d at 116. In *Iacaboni*, the Court held that the defendant's home was not subject to forfeiture

pursuant to 18 U.S.C. § 982(a)(1).[6]  *Id.* at 117.  The criminal defendant there had "pled guilty to two counts of gambling-related conspiracy, one count of managing an illegal gambling business, and one count of money laundering.  In a separate information, he also pled guilty to substantive money laundering." *Id.* at 105.  The evidence showed that the defendant engaged in an extensive illegal gambling scheme, using the proceeds from his scheme to pay his employees and to make deposits into his bank account.  *Id.* at 107–110.  The Court noted that, "[g]iven . . . the nature of an illegal gambling operation, defendant satisfied the *initial* requirement of the money laundering statute—*i.e.,* a monetary transaction knowingly involving the proceeds of an illegal activity—nearly every time the illegal gambling money changed hands." *Id.* at 112.  However, the Court noted that "not every financial transaction involving the proceeds of an illegal activity constitutes money laundering." *Id.* at 113 (citation omitted).  In this vein, the Court held that the defendant's residence was not subject to forfeiture under the statute.  Although the evidence showed "that the . . . property was used to promote defendant's gambling business[,]" because "[e]nvelopes with money and documents were dropped off and picked up in the garage, faxes and phones calls related to the enterprise came to and went from the residence, football tickets were 'corrected' on the premises, and meetings were held in the house[,]" the Court held that it was "equally clear, however, that the conduct centering on the house itself could not constitute the crime of money laundering, since the house was neither the 'proceeds' of any illegal activity, nor a part of any 'transaction' as the money

laundering statute defines that term." *Id.* at 115.

In contrast to the house held not to be subject to forfeiture in *Iacaboni,* here, there was a monetary transaction involving the proceeds of Dr. Howard's money laundering scheme, as the St. Joe, Florida property had been obtained purely with illegally obtained funds.  Thus, when Dr. Howard used the Florida property to obtain the funds secured by the second mortgage, he knew he was using property that had been purchased with proceeds of specified unlawful activity to acquire the funds.  And, when he then used the funds he received from the second mortgage to obtain the release of the lien on the aircraft, he engaged in money laundering activity that involved the aircraft.  This amounted to a violation of 18 U.S.C. § 1956.  As the Court noted in *United States v. All Assets of Blue Chip Coffee, Inc.,* 836 F.Supp. 104, 107 (E.D.N.Y.1993), a pre-CAFRA case, "property need only be 'involved' in a transaction or attempted transaction[,]" to be subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  The *Blue Chip Coffee* Court rejected the claimants' argument "that to be 'involved' in a criminal activity for the purposes of forfeiture under 18 U.S.C. § 981, the property must 'represent *proceeds* of a specified criminal activity.' " *Id.* (emphasis added).  Rather, the Court noted, the statute "provides for the forfeiture of any property involved in a transaction or attempted transaction 'in violation of . . . section 1956. . . .' " *Id.* at 108.  Relying on this reasoning, which has not been altered by the enactment of CAFRA, the Court concludes that the government has demonstrated that the aircraft was involved in a monetary transaction involving the proceeds of specified unlawful activity.  Clearly, this involvement renders the aircraft subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).[7]

---

**6.** Similar to 18 U.S.C. § 981(a)(1)(A), § 982(a)(1) mandates the forfeiture of any

property "involved in" any money laundering offense.

**7.** Because it has concluded that forfeiture

### III. Conclusion

Because the Court is now satisfied that the government has established that the defendant aircraft was involved in a monetary transaction involving specified unlawful activity, the Court concludes that the Piper aircraft is subject to forfeiture. The government is directed to provide the Court with a proper Order for forfeiture of the aircraft.

**SO ORDERED** on this 2nd day of April, 2004.

### *ORDER*

In accordance with the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that the government's Motion for Summary Judgment as it pertains to the Piper Aircraft is granted. It is further

**ORDERED** that the government is directed to submit a proposed order regarding forfeiture of the Piper Aircraft within ten (10) days of the date of this Order.

**SO ORDERED** on this 2nd day of April, 2004.

pursuant to 18 U.S.C. § 981(a)(1)(A) is proper, the Court will not address the government's argument for forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).