**UNITED STATES of America**

**v.**

**Jesse Issa MAALI M. Saleem Khanani Khan Aslam Saeedullah Awan Mahmood Jamal Big Bargain World, Inc. SS Mart, Inc. Jeans Unlimited, Inc. Denim Unlimited, Inc. Barakat Corporation Barakat International, Inc. David Portlock**

No. 6:02–CR–171–ORL–28KR.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 28, 2005.

See, also, 2004 WL 2656879.

Elizabeth M. Dunne, Jennifer L. Tomsen, Tucker H. Byrd, Greenberg Traurig, P.A., Russell Eugene Crawford, Law Office of Russell E. Crawford, Mark E. NeJame, NeJame, Harrington & Barker, P.A., Robert Alan Leventhal, Harrison T. Slaughter, Jr., Joseph A. Fisher, III, Leventhal & Slaughter, Charles M. Greene, Greene & Lee, P.L., Donald R. West, Federal Public Defender's Office, Robert James Buonauro, Law Office of Robert J. Buonauro, John Yates Benford, John Y. Benford, P.A., Orlando, FL, Mark P. Schnapp, Greenberg Traurig, P.A., Miami, FL, W. Bryan Park, II, Law Offices of W. Bryan Park II, Chandler Robinson Muller, Thomas Devlin Sommerville, Law Offices of Muller & Sommerville, P.A., Robert B. White, Jr., Sobering, White & Luczak, P.A., Winter Park, FL, John David Galluzzo, John D. Galluzzo, P.A., Fern Park, FL, Roland Augustine Hermida, Law Office of Roland A. Hermida, Tampa, FL, for Defendants.

Cynthia A. Hawkins, U.S. Attorney's Office Middle District of Florida, Daniel W. Eckhart, U.S. Attorney's Office, Orlando, FL, for Plaintiff.

## MEMORANDUM

ANTOON, District Judge.

This Memorandum sets forth the reasoning for the Court's earlier decision to grant Defendants David Portlock ("Portlock") and M. Saleem Khanani's ("Khanani") Motions for Acquittal on Count Fifty–Five of the United States Government's ("the Government") Third Superceding Indictment (Doc. 552).

### I. Procedural Background

The Government's Third Superceding Indictment ("Indictment") against Defendants included charges that they: knowingly encouraged or induced aliens to reside in the United States unlawfully in violation of 8 U.S.C. § 1324(a)(1)(A)(iv); conspired to conceal, harbor, or shield from detection, or encouraged or induced aliens to illegally enter or reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)($l$): conspired to engage in money laundering or conspired to engage in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1956(h); and committed wire and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343. On December 14, 2004. the jury returned verdicts finding Defendant Khanani guilty on all seventy-one counts against him and Defendant Portlock guilty on Counts Fifty–Four through Seventy-One. (Docs.805–06).

Defendants had previously moved for acquittal on Count Fifty–Five of the Indictment, which charged that Defendants conspired to commit money laundering offenses in violation of 18 U.S.C. § 1956(h). Pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure, the Court reserved decision on Defendants' motions until after the jury returned its verdicts. On January 7, 2005, the Court, ruling from the bench, granted Defendants' motions for acquittal on Count Fifty–Five.

## II.  Facts

The following facts formed the basis for the Government's case against Defendants. Defendant Khanani was a 40% owner of Big Bargain World, Inc., SS Mart. Inc., and several retail stores, including Jeans Unlimited, Inc. ("Jeans Unlimited") and Denim Unlimited, Inc. ("Denim Unlimited"). At least some of the employees at Jeans Unlimited and Denim Unlimited were aliens who were not authorized to work in the United States. Defendants organized and implemented a scheme whereby they paid the undocumented workers with money skimmed from sales at Jeans Unlimited and Denim Unlimited which they channeled into four shell companies-Florida Freight & Distributors, Rainbow Merchandising, Center Care Maintenance, and T & S Printing. Defendants did not report the income that they used to pay the workers and also failed to remit federal or state employment taxes on the workers' wages. Defendants also failed to pay the undocumented workers "time-and-a-half" wages for overtime, as required by federal law. As a result of the scheme, Defendants enjoyed increased profits and decreased tax liability.

## III.  Rule 29 Standard

Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "In deciding a Rule 29 motion for judgment of acquittal, a district court must 'determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" *United States v. Grigsby,* 111 F.3d 806, 833 (11th Cir.1997) (quoting *United States*

*v. O'Keefe,* 825 F.2d 314, 319 (11th Cir. 1987)).

## IV.  Analysis

Section 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Defendants were specifically charged with conspiring to commit money laundering in violation of §§ 1956(a)(1)(A)(i)-(ii), 1956(a)(1)(B)(i), and 1957(a). The portions of § 1956 which form the basis for the Government's conspiracy charge under § 1956(h) provide for the punishment of anyone who:

> [K]nowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-
>
>> (A)(i) with the intent to promote the carrying on of specified unlawful activity: or
>>
>> (ii) with intent to engage in conduct constituting a violation of 7201 or 7206 of the Internal Revenue Code of 1986 [26 U.S.C. 7201 or 7206]; or
>
> \*     \*     \*     \*     \*     \*
>
> ■ (B) knowing that the transaction is designed in whole or in part-(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . .

Section 1957(a) subjects to criminal liability any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 [which] is derived from specified unlawful activity." In short, to establish that Defendants violated

18 U.S.C. § 1956(h), the Government had the burden of showing that Defendants conspired to launder or to engage in a monetary transaction involving the "proceeds of specified unlawful activity."[1]

At trial, the Government argued that Defendants laundered or engaged in financial transactions involving "proceeds" derived from violations of 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud) and 8 U.S.C. § 1324 (relating to bringing in and harboring certain aliens), all of which are delineated as specified unlawful acts, or predicate offenses, under the money laundering statute. *See* 18 U.S.C. §§ 1956(c)(7)(A): § 1961(1). The Government claimed that the tax and cost savings from hiring illegal aliens constituted "proceeds" which Defendants then deposited into the accounts of shell companies for the purposes of concealing their unlawfully derived income and promoting their illegal employment scheme. Defendants raised essentially two arguments on their motions for acquittal. First. Defendants argued that they never completed a predicate offense which yielded "proceeds" that they could have laundered. Second, they argued that neither the tax nor labor cost savings that they enjoyed from hiring illegal aliens constituted "proceeds."

■ Defendants' first argument rests on the Eleventh Circuit's decision in *United States v. Christo*, in which the court determined that it is only after a "predicate crime becomes 'a completed offense'" that a "money laundering can occur." 129 F.3d 578, 579–80 (11th Cir.1997). Defendants contend that channeling money into shell companies to pay their undocumented employees did not constitute "money laundering" because, rather than constituting a transaction separate from the underlying scheme to employ illegal aliens, it was instead an integral part of that scheme. Defendants' assumption appears to be that *Christo* stands for the proposition that to launder the "proceeds" of any illegal scheme, the alleged laundering cannot be an essential aspect of the scheme.

Defendants read *Christo* too broadly. The starting point for the court's analysis in *Christo* was its understanding that "[m]oney laundering is an offense to be punished separately from an underlying criminal offense." *Id.* at 580 (refusing to find that "money laundering is inherent in bank fraud or misapplication of funds"); *see also United States v. Mankarious*, 151 F.3d 694, 704 (7th Cir.) (finding that the requirement under *Christo* makes certain that "[a] money launderer must obtain proceeds before laundering [them]."), *cert. denied* 525 U.S. 1056, 119 S.Ct. 621, 142 L.Ed.2d 560 (1998). This rationale operates to preclude a money laundering charge based on a financial transaction which is an essential element of the underlying criminal act. Whether the financial transaction or underlying criminal act is part of an ongoing criminal scheme is irrelevant. If a conviction for money laundering is based on the use of funds from a completed predicate offense, the money laundering and predicate offense are sufficiently separate regardless of whether the predicate offense or the laundering were committed as part of a larger scheme. Thus, in this case, all that *Christo* required the Government to show was that Defendants completed a single predicate offense prior to the alleged laundering, not that they carried out their larger criminal scheme to its conclusion. Nor was the Government required to show that the alleged laundering was less than essential to the criminal scheme. To the contrary, using criminally derived money to perpetuate

---

1. Section 1957(f)(2) provides that "the term 'criminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense." Thus, both §§ 1956 and 1957 require a showing of "proceeds."

criminal activity goes to the very heart of what the money laundering statute proscribes. *United States v. Grasso,* 381 F.3d 160, 168 (3d Cir.2004) ("[T]he money laundering statute prohibits not only the concealment of proceeds, but also the promotion of illegal activity."). Defendants' argument that the Government's case falters under *Christo* is, therefore, unavailing.

■ Defendants' motions for acquittal have instead been granted because the Government's cost savings theory is at odds with the plain and ordinary meaning of "proceeds." While § 1956 does not define "proceeds," the term is a "commonly understood word in the English language." *United States v. Haun,* 90 F.3d 1096, 1101 (6th Cir.1996). While there is disagreement among courts as to whether "proceeds" contemplate "net profits," "gross receipts," or "gross profits," that issue concerns not so much the ordinary meaning of "proceeds" as it does the precise scope of the term. *Compare Grasso,* 381 F.3d at 168 (finding that proceeds are gross receipts). *United States. v. Hurley,* 63 F.3d 1, 21 (1st Cir.1995) (same), *United States v. McHan,* 101 F.3d 1027, 1041–43 (4th Cir.1996) (same), *United States v. Simmons,* 154 F.3d 765, 770–71 (8th Cir. 1998) (same), *with United States v. Scialabba,* 282 F.3d 475 (7th Cir.) (proceeds are net profits), *cert. denied,* 537 U.S. 1071, 123 S.Ct. 671, 154 L.Ed.2d 565 (2002), *and United States v. Masters,* 924 F.2d 1362, 1369–70 (2d Cir.1991) (proceeds are gross profits).[2] By contrast, where the basic meaning of "proceeds" is concerned, courts are generally in accord.

Definitions of "proceeds" which courts have cited include "the amount of money received from a sale," *Black's Law Dictionary* 1222 (7th ed.), "the sum, amount, or value of property sold or converted into money or into other property," *Black's Law Dictionary* 1204 (6th ed.1990), and "that which is obtained ... by any transaction," *The Compact Edition of the Oxford English Dictionary* 2311 (1971 & Supp. 1985). *See Grasso,* 381 F.3d at 167–68 (citing and discussing definitions relied upon or cited by other circuit courts); *McHan,* 101 F.3d at 1041 (citing the definition from the sixth edition of *Black's Law* ). When reduced to their most basic elements, these definitions simply provide that "proceeds" are something which is obtained in exchange for the sale of something else as in, most typically, when one sells a good in exchange for money.

In the only case that supports the Government's cost savings theory, the court in *United States v. Tyson Foods* relied on the definition from *Webster's Third International Dictionary of the English Language Unabridged* (1981), which provides that "proceeds" are "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue: the total amount brought in." No. 4:01–cr–061, slip. op. at 10 (E.D.Tenn. Feb. 4, 2003) (finding that "[t]he ordinary, natural meaning of the word 'proceeds' ... is broad enough to encompass the government's theory of cost savings"). The court did not explain why it considered the definition as necessarily encompassing cost savings. Nor did the court explain why it chose *Webster's* definition over other definitions which would have clearly supported a conclusion contrary to the one it reached. *Compare, e.g., Webster's Third International Dictionary of the English Language*

---

**2.** This is a problem inherent in defining the contours of virtually any term, no matter how commonly understood it is. "Walk," for example, is obviously a commonly understood word, yet reasonable persons may differ as to its precise reach, diverging on answers to such questions as what speed the taking of steps must obtain before the action assumes the character of a "jog" or a "run" rather than a "walk."

*Unabridged* 1807 (1981), *with Black's Law Dictionary* 1242 (8th ed.2004) ("[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale" or "[s]omething received upon selling, exchanging, collecting or otherwise disposing of collateral").

Relative to other definitions of "proceeds," the distinguishing feature of the *Webster's* definition relied upon in *Tyson Foods* is its lack of clarity. *Cf. Black's Law Dictionary* (8th ed.2004). While other definitions emphasize that "proceeds" are derived from a sale or transaction, *Webster's* employs more amorphous terms, which fail to clearly indicate the relationship between "proceeds" and the activity from which they derive. It is perhaps this lack of clarity which the Government in this case attempts to exploit by arguing that the "proceeds" of a thing are that which would not have been obtained *but-for* that thing. Under this approach, the Defendants' revenues from the sale of jeans are. at least in part, "proceeds" of the labor which produced the jeans because, *but-for* the labor, the jeans would neither have been made nor sold. Of course, under this approach, it might also be contended that the revenues from the jeans were "proceeds" of the relative economic prosperity and political stability of the United States. Were it not for these two factors, the workers would not have migrated to the United States, and Defendants would not have been able to illegally use their labor to produce jeans. *See* W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 41, at 264 (5th ed. 1984) ("In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go backward to the dawn of human events, and beyond.").

As this absurd though causally plausible example illustrates, the Government's approach would stretch the definition of "proceeds" well beyond any ordinary conception of the term and thereby lay the foundation for an unprecedented expansion of the money laundering statute.

It was surely with this concern in mind that another court in this district recently rejected the cost savings theory in the context of a RICO civil action. In *Anderson v. Smithfield Foods, Inc.*, the court, facing a claim that defendants laundered money which they saved by violating RICO and certain state and federal environmental laws, determined that:

> The money that Defendants allegedly illegally obtained to violate RICO and environmental laws, and to allegedly commit mail and wire fraud, was money that Defendants legally obtained through the operation of its business. Saving money as a result of the alleged noncompliance with the requirements of an environmental statute does not make the money illegally obtained for the purposes of the money laundering statute.

209 F.Supp.2d 1270, 1275 (M.D.Fla.2002). As purely a matter of causation, the court might have concluded that the defendants' assets reached levels that they would not have otherwise reached were it not for their failure to comply with the law. In the court's view, however, the money laundering statute was not intended to address claims where the ill-gotten gains are so causally attenuated from the underlying criminal activity. This view had previously been well-summarized by Justice Scalia who remarked, in regard to the requirement of proximate causality in civil claims, "Life is too short to pursue every human act to its remote consequences." [3] *Holmes*

---

3. The boundlessness of but-for causation is well-illustrated by the following rhyme: "For want of a nail the shoe was lost. For want of a shoe the horse was lost. For want of a horse the rider was lost. For want of a rider the battle was lost. For want of a battle the kingdom was lost. And all for the want of a

*v. Sec. Investor Protection Corp.*, 503 U.S. 258, 287, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (Scalia, J., concurring).

The lack of clarity in *Webster's* definition need not serve as a barrier to reaching the common sense result arrived at by the court in *Anderson*. Rather, a sensible course would be to assume that *Webster's* did not intend for the type of departure from other definitions of "proceeds" which the cost savings theory requires. This is effectively the approach that the Ninth Circuit took in *United States v. Akintobi* when it equated *Webster's* definition of "proceeds" with "that which is obtained . . . by any transaction." 159 F.3d 401, 403 (9th Cir.1998) (internal citation omitted). This construction simply squares *Webster's* definition with other definitions of "proceeds" by requiring that the moneys be obtained from a particular transaction (as in a sale).

■ Having ascertained the plain and ordinary definition of "proceeds," it is clear that the term does not contemplate profits

or revenue indirectly derived from labor or from the failure to remit taxes. While it is natural and clearly correct to say that Defendants received "proceeds" from the sale of jeans, it is, by contrast, both causally tenuous and decidedly unnatural to say that the moneys one has received from the sale of a good are, not the "proceeds" from the sale of a good, but "proceeds" of the labor used to produce the good.[4] It is in accordance with this reasoning that Defendants' motion for acquittal has been granted.

However, even assuming that any ambiguities inhere either within a single definition or between different definitions of "proceeds," the rule of lenity dictates that they be "resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). Application of the rule of lenity, the Supreme Court has noted, is particularly apt where a court must choose between "the familiar meaning of [a] word" and a "vague and obscure" definition. *See Scheidler v.*

horseshoe nail." Benjamin Franklin, Poor Richard's Almanac, Preface: Courteous Reader (1758) (quotation omitted); *see also Holmes*, 503 U.S. at 287, 112 S.Ct. 1311 (Scalia, J., concurring) (" '[F]or want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith.").

4. In denying Defendants' motions for acquittal on the mail and wire fraud counts against them, it was determined that the state of Florida and the federal government were deprived of their property interests in tax revenue. *See, e.g., Fountain v. United States*, 357 F.3d 250, 260 (2d Cir.2004) (determining that "taxes owed to governments" are " 'property' within the meaning of the mail and wire fraud statutes"). It bears mentioning that there is no conflict between this determination and the present determination that Defendants did not obtain "proceeds" in violation of the money laundering statute. To say that Defendants *deprived* the state and federal governments of their interests in taxes is considerably different from saying that Defen-

dants *obtained proceeds*. As contrasted with obtaining "proceeds," an individual need not engage in a sale or any other type of transaction to deprive a government of its interest in taxes. To accomplish the latter, all that would be required is to do what Defendants did-*refrain* from paying their taxes.

It is also worth noting that the determination that Defendants' immigration offenses did not yield "proceeds" does not preclude money laundering prosecutions based on § 1324 violations. A clear example of obtaining "proceeds" from a violation of § 1324 would involve the trafficking of illegal aliens into the United States in return for financial compensation. If present trends persist, this type of § 1324 violation might, in fact, become a common basis for money laundering charges. Indeed, human smuggling has evolved into such a lucrative business that it now rivals narcotics trafficking. *See, e.g., Newsweek, Coyote, Inc.*, August 30, 1999 (noting that "narcotics smugglers are switching over to aliens" due to the lucrativeness of human trafficking).

*N.O.W.*, 537 U.S. 393, 403 n. 8, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). Thus, to the extent that any tension remains between *Webster's* definition of "proceeds" and more precise and familiar definitions of the term, it must be resolved in favor of Defendants.

For the foregoing reasons, Defendants' motions for acquittal on Count Fifty–Five of the Government's Indictment have been **GRANTED.**