

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2004

# USA v. Grasso

Precedential or Non-Precedential: Precedential

Docket No. 03-1441

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Grasso" (2004). *2004 Decisions.* Paper 358.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/358

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-1441 / 03-1442

UNITED STATES OF AMERICA

v.

MICHAEL J. GRASSO, JR.,

Appellant

On Appeal from the
United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal Action Nos.
00-cr-00051-1/01-cr-00783-1
( Honorable Berle M. Schiller)

Argued December 12, 2003

Before: AMBRO, FUENTES
and GARTH, Circuit Judges

(Opinion filed  August 23, 2004)

Walter M. Phillips, Jr., Esq. (Argued)
Kevin J. Kotch, Esq.
Hoyle, Fickler, Herschel & Mathes
One South Broad, Suite 1500
Philadelphia, PA 19107

*Attorneys for Appellant*

Patrick L. Meehan
   United States Attorney
Laurie Magid
   Deputy United States Attorney
   for Policy and Appeals
Robert A. Zauzmer
   Assistant United States Attorney
   Senior Appellate Counsel
Anne Whatley Chain (Argued)
   Assistant United States Attorney
Peter F. Schenck, Esq.
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

*Attorneys for Appellee*

OPINION OF THE COURT

AMBRO, Circuit Judge

Michael J. Grasso appeals his conviction and sentence for money laundering. He argues that the term "proceeds" in the money laundering statute, 18 U.S.C. § 1956, encompasses only the net profits, and not the gross receipts, of criminal activity. This proposed statutory construction is incompatible with the text of the statute as well as existing case law in our Circuit. We therefore affirm Grasso's conviction. However, we do remand for the District Court to reconsider its restitution award.

## I.    Factual and Procedural History

Grasso sold various fraudulent work-at-home schemes from early 1997 until late 1999. The programs, which were advertised in national magazines,

purported to enable purchasers to earn substantial payments for at-home work, with profits to be divided between the participants and Grasso. In reality, the programs simply instructed purchasers to solicit new customers who would purchase the same programs for similar amounts.[1]

In February 2000, Grasso was indicted for mail fraud, wire fraud, and money laundering, in Criminal No. 00-51. The money laundering counts charged that he funded his ongoing criminal activity with the proceeds of his fraudulent schemes. Grasso allegedly reinvested the proceeds of his criminal activity to cover advertising, printing, and mailing expenses. Nine months later, a superseding indictment was filed, which added a count for obstruction of justice based on Grasso's attempt to access frozen funds and slightly modified the money laundering charges.[2] In December 2002, Grasso was indicted yet again, for forgery and obstruction of justice, in Criminal No. 01-783.[3] In February 2002 the District Court severed the obstruction of justice count in the superseding indictment in Criminal No. 00-51, which involved Grasso's first attempt to obtain frozen funds, and consolidated that count with the proceeding in Criminal No. 01-783.

Trial on the superseding indictment took place in February 2002. At the close of the Government's case, Grasso moved orally for judgment of acquittal on the mail and wire fraud counts, as well as four of the money laundering counts. The motion was denied, and thereafter a jury convicted Grasso on all charges.[4] He subsequently pled guilty to the obstruction of justice count originally filed in Criminal No. 00-51, and the cases were consolidated for sentencing.

Payment of defense counsel fees was a recurring issue during the criminal proceedings. In March 2000, Grasso filed a motion to release funds from his frozen accounts to pay defense counsel fees and expenses, and the motion was denied. The case was assigned to another judge in March 2001, and in December 2001 that judge ordered the release of $200,000 toward these expenses. In March 2002, defense counsel sought the release of

---

[1]In addition to fraudulently promoting work-at-home employment schemes, Grasso allegedly sold mailing lists and engaged in other illegal activity. He contests many of the representations made by the Government. Because these factual matters do not affect our resolution of the issues on appeal, we do not discuss them.

[2]The original indictment contained 508 counts alleging money laundering, whereas the superseding indictment included 482 counts.

[3]The indictment charged that Grasso forged the signatures of a district judge and a deputy clerk in conjunction with fictitious letters directing various financial institutions to release his frozen funds.

[4]Two money laundering counts were dismissed during the course of the trial.

additional funds from frozen accounts for payment of counsel fees. As a result, Grasso was ordered to provide documentation related to one of the non-frozen accounts, and the Probation Office examined his income and assets. The subsequent investigation of his accounts revealed that he had deposited more than $800,000 into his non-frozen accounts after the entry of a preliminary injunction in 1999, which was intended to protect his assets for distribution to victims.

Prior to sentencing, Grasso objected to the Government's proposed sentencing order on various grounds. He moved for a downward departure and submitted a memorandum in support of a "renewed" motion for judgment of acquittal on the money laundering counts, relying on the Seventh Circuit's recent decision in *United States v. Scialabba*, 282 F.3d 475 (7th Cir.), *cert. denied*, 537 U.S. 1071 (2002). Although Grasso suggested in the memorandum that he had submitted an earlier motion for acquittal on all money laundering counts, that motion challenged the sufficiency of the evidence as to Counts 444 through 447 only, and for factually specific reasons.

The District Court sentenced Grasso for the fraud and money laundering convictions to 97 months incarceration, three years supervised release, a fine of $150,000, restitution in the amount of $761,126.39, and a special assessment of $49,500. The Court made no findings in support of its award of restitution. In addition, for the obstruction of justice plea, Grasso received 15 months imprisonment (five months of which would run consecutively to the first sentence), a fine of $30,000, and a $300 special assessment. The restitution, fines, and special assessments, as well as $100,000 in counsel fees, were to be paid from the frozen funds. Grasso appeals.[5]

## II. Discussion

We address two principal issues. First, did the Government need to establish that Grasso's money laundering transactions were conducted with the net profits, as opposed to gross receipts, of his illegal activity? Second, did the District Court err by failing to specify in its order of restitution the manner and schedule of payment?

## A. Money Laundering Convictions and Sentence

Grasso alleges that the Government transformed a "garden variety fraud case with no hint of organized crime involvement into a 482 count money laundering case." Grasso's conviction for money laundering was based on his "reinvestment of proceeds" for the purchase of advertisements, telephone services, printing, envelopes, and other materials in furtherance of his fraudulent activity by means of wire transfer, checks, and credit cards. Simply put, Grasso paid

---

[5]The District Court exercised jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

for his business expenses with the receipts from his sales.[6] The relevant statute, 18 U.S.C. § 1956, provides:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
>
> (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
>
> (B) knowing that the transaction is designed in whole or in part—
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
>
> (ii) to avoid a transaction reporting requirement under State or Federal law,
>
> [commits a felony].

The statute does not define "proceeds." Grasso contends that the term should be understood—as a matter of textual interpretation, congressional intent, and policy—to mean "net profits." The Government, by contrast, urges us to adopt a broader definition encompassing all gross receipts of illegal activity.

## 1. Standard of Review

Grasso has framed the question presented in his appeal as "[w]hether a defendant can be convicted of and sentenced for money laundering under 18 U.S.C. § 1956(a)(1)(A)(i) for reinvesting the proceeds of specified unlawful activity, where the government's proof fails to show that the money allegedly laundered represented the proceeds, or net profits, from the unlawful activity as opposed to gross receipts or revenue." At its core, Grasso's appeal challenges the sufficiency of the evidence upon which he was convicted.[7] In other words, "[h]e contends

---

[6]Grasso argues that the payments were made for past purchases. The Government disputes this claim as a factual matter. We have held, in any case, that it is possible to "promote" unlawful activity, within the meaning of the money laundering statute, even if it has already been completed. *United States v. Paramo*, 998 F.2d 1212, 1218 (3d Cir. 1993).

[7]It is undisputed that the Government presented no evidence suggesting that

4

that, as a matter of law, the facts do not support the conclusion that money laundering occurred." *United States v. Morelli*, 169 F.3d 798, 802 (3d Cir. 1999) (classifying as a "sufficiency of the evidence" argument the defendant's claim that his conviction for money laundering was premised on a faulty statutory construction). While Grasso urges us to review the District Court's judgment *de novo*, the Government contends that we should review it for plain error because he failed to raise his statutory argument in a Rule 29 motion for judgment of acquittal and therefore forfeited it.

The Federal Rules of Criminal Procedure dictate when a criminal defendant may challenge a conviction that is based on insufficient evidence. Rule 29 provides that a defendant must make an appropriate motion within seven days after a guilty verdict is entered, or within an extended time specified by the Court during the seven-day period. If a defendant fails timely to raise an argument that may establish his or her innocence, the court is unlikely to find it persuasive at a later time. *See, e.g.*, *United States v. Powell*, 113 F.3d 464, 466–67 (3d Cir. 1997) ("If a defendant fails to file a timely motion for judgment of acquittal, we review sufficiency of evidence for plain error.").

The jury convicted Grasso on

February 25, 2002. He did not file a motion within seven days of the verdict, nor did the Court extend the applicable period. On October 9, 2002, however, he filed a memorandum including an argument in support of his "renewed motion for judgment of acquittal on the money laundering counts." Although it was clear that Grasso had failed to file a timely Rule 29 motion,[8] the parties agreed at oral argument that the District Court would consider the "renewed" motion "for the limited purpose of determining whether Defendant should be sentenced under the money laundering or fraud guidelines."[9] That motion did

---

[8]As already noted, at the close of the Government's case the defense moved for judgment of acquittal on four of the money laundering charges. The motion did not allege that the Government had failed to demonstrate the use of net proceeds.

[9]Grasso has framed his argument as a challenge to his sentence rather than his conviction. As a general matter, "[w]e review the district court's application of the sentencing guidelines *de novo*." *See United States v. Omoruyi,* 260 F.3d 291, 297 n.8 (3d Cir. 2001). We thus may vacate a sentence if we find that it was improperly entered. But in this case the District Court had no choice but to sentence Grasso for money laundering. "In cases . . . in which several counts, including fraud and money laundering, have been grouped, . . . the count carrying the highest applicable offense level must apply to the entire group for sentencing

---

Grasso's payments and expenditures were funded with net profits of the fraudulent scheme rather than gross receipts.

purposes. Under the guidelines as amended, . . . courts have no discretion to decide that the money laundering guideline is inappropriate or not the most applicable guideline on the facts of a given case." *United States v. Diaz*, 245 F.3d 294, 303 (3d Cir. 2001) (citation omitted). Plenary review of the sentence alone does Grasso no good, because we may inquire only whether, assuming he was lawfully convicted of money laundering, the District Court properly calculated his sentence. Upon the facts presented, there is no doubt that it did.

Grasso's strategy, of course, is slightly outside the letter of *Diaz*. He urged the District Court to sentence him for fraud rather than money laundering not because the sentencing guidelines applicable to the latter more appropriately reflected the scope of his criminal activity, but rather because he contended he should not have been convicted of money laundering in the first place. Were we to accept this gambit, we would permit Grasso to end-run the principle that a court should not disturb a jury verdict unless the defendant timely objects. *See Carlisle v. United States*, 517 U.S. 416, 433 (1996) (holding that a district court is without discretion to grant a defendant's untimely motion for judgment of acquittal pursuant to Rule 29).

In a similar vein, Grasso relies heavily on our decision in *United States v. Morelli*, 169 F.3d 798, 801 (3d Cir. 1999), in which we held that the defendant was not obligated to challenge his money

not serve to preserve the statutory argument for *de novo* review.

The forfeiture principle may lead to harsh results. "'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *United States v. Olano*, 507 U.S. 725, 731 (1993) (citing *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Its effects are mitigated, however, by Federal Rule of Criminal Procedure 52(b), which permits a court of appeals to consider a "plain

laundering conviction in a Rule 29 motion. In *Morelli*, the jury found that money laundering was merely one among several bases for his RICO conspiracy conviction. Because the conviction rested on independent predicate acts, any contemporaneous objection to the money laundering allegations would have been futile; even if the court had agreed that the money laundering statute was inapplicable, there were adequate alternative bases to sustain the conviction. Consequently, the defendant's interpretation of the money laundering statute affected only his sentence, and the District Court's decision at sentencing was "not bound up with the jury's verdict." *Id.* at 803. In our case, by contrast, the jury specifically found that Grasso was guilty of money laundering. The District Court could not have modified Grasso's sentence without disturbing the underlying conviction.

6

error that affects substantial rights . . . even though it was not brought to the court's attention."[10]

Grasso failed to file a Rule 29 motion within the designated time. His claim does not fall within any of the recognized exceptions to the forfeiture rule. We therefore review his argument for plain error. We note, however, that the standard of review is ultimately irrelevant to our resolution of this case. Because we conclude that the District Court properly construed § 1956, we would affirm even under *de novo* review.[11]

---

[10]"Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals." *Olano*, 507 U.S. at 732. Nonetheless, we "should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citations omitted). The Supreme Court has clarified that we may "*correct* the error (either vacating for a new trial, or reversing outright)" only if it is "plain" and "affects substantial rights." *Id.* (emphasis in original).

[11]Grasso argues that the Court may exercise plenary review of his claim *even if he forfeited it*, because it is based on statutory interpretation. This proposition is inconsistent with the Supreme Court's decisions in *Olano*, 507 U.S. 725 (applying plain error review to interpretation of the Federal Rules of Criminal Procedure), and *Johnson v. United States*, 520 U.S. 461 (1997)

## 2. Definition of "Proceeds"

Under the plain error standard, the defendant ordinarily bears the burden of proving that: (1) the court erred; (2) the error was "plain" at the time of appellate consideration; and (3) the error affected substantial rights, usually meaning that the error "must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734; *see also Johnson v. United States*, 520 U.S. 461, 466–68 (1997). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (citation omitted). Grasso cannot meet the first and most important element because the District Court did not err. Thus we need go no further.

We agree with the District Court that sentencing Grasso for money laundering was within the scope of the money laundering statute. Grasso contends, citing the Seventh Circuit's recent decision in *United States v. Scialabba*, 282 F.3d 475 (7th Cir.), *cert. denied*, 523 U.S. 1071 (2002), that he was improperly convicted of and sentenced for

---

(reviewing for plain error the district court's failure to submit to the jury the question whether a false statement was material despite intervening Supreme Court case deciding as a matter of constitutional law that materiality is a jury question).

7

money laundering because the Government failed to establish that the money allegedly laundered derived from the net profits of his illegal activity. The Seventh Circuit held in *Scialabba* that when a "crime entails voluntary, business-like operations, 'proceeds' must be net income; otherwise the predicate crime merges into money laundering (for no business can be carried out without expenses) and the word 'proceeds' loses operational significance." *Id.* at 475.

In *Scialabba*, the defendants were convicted of operating an unlawful gambling business, filing false tax returns, conspiring to defeat tax collection, and money laundering. The last charge was based on the defendants' use of revenue from their gambling operations to meet the expenses of the business. As in our case, conviction for money laundering substantially increased the defendants' prison terms, and they therefore appealed their convictions under the money laundering statute, § 1956(a).

The Seventh Circuit rejected the Government's argument that use of gross receipts to fund ongoing criminal activity constituted money laundering. The Court explained that accepting the Government's theory would be "equivalent to saying that every drug dealer commits money laundering by using the receipts from sales to purchase more stock in trade, that a bank robber commits money laundering by using part of the loot from one heist to rent a getaway car for the next, and so on." *Id.* at 476. Transactions of this nature, the Court explained, do not implicate the

concerns underlying the statute—namely, they are not "financial transactions to hide or invest profits in order to evade detection, the normal understanding of money laundering." *Id.*

While Judge Easterbrook's opinion in *Scialabba* is well-argued and intuitively appealing, we believe it reaches an incorrect result. We consider various interpretations of proceeds in light of the conventional understanding of the term, the text and purpose of § 1956, and existing case law in our Circuit. In so doing, we conclude that "proceeds," as that term is used in the money laundering statute, means gross receipts rather than profits.

Section 1956 does not define proceeds. Judge Easterbrook assumed that "most speakers of English would understand" the term proceeds to reach only the "profits of the business." *Scialabba*, 282 F.3d at 477. Viewed in a vacuum, however, we discern no clear meaning of the term. Congress might easily have used "gross receipts" if it so intended. *Cf. Scialabba*, 282 F.3d at 477 ("It would have been easy enough to write 'receipts' in lieu of 'proceeds' in § 1956(a)(1).") But it might just as readily have used the term "profits."

Secondary sources defining the word "proceeds" undercut Grasso's proposed interpretation based on *Scialabba*. For example, the Uniform Commercial Code defines "proceeds" as "whatever is acquired upon the sale, lease, license, exchange, or other disposition of

collateral. . . ." U.C.C. § 9-102(64)(A). Similarly, *Black's Law Dictionary* 1222 (7th ed. 1999) defines "proceeds" as "the amount of money received from a sale" and lists "net proceeds" as a distinct sub-entry under "proceeds." Nonetheless, dictionary definitions are neither uniform nor dispositive. *Webster*'s first definition of proceeds is "the total amount brought in," but the second is "net profit," and the third is "the net sum received . . . after deduction of any discount or charges." *Webster's Third New International Dictionary* 1807 (1986).

Judicial definitions of "proceeds" in other contexts also vary, though they are generally more expansive than the interpretation Grasso urges. In construing the scope of criminal forfeiture of "proceeds" under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, most courts have held that proceeds involve more than net profits. In fact, the Seventh Circuit was unique in holding otherwise. *See United States v. Masters*, 924 F.2d 1362, 1369–70 (7th Cir. 1991). The Second Circuit and a District Court in our Circuit have held that proceeds represent "gross profits," meaning total revenues minus marginal costs, but not fixed costs. *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 497–99 (2d Cir. 1985); *United States v. Milicia*, 769 F. Supp. 877, 888 (E.D. Pa. 1991). The First, Fourth, and Eighth Circuits understand the term to mean "gross revenues." *United States v. Hurley*, 63 F.3d 1, 21 (1st Cir. 1995); *United States v. McHan*, 101 F.3d 1027, 1041–43 (4th Cir. 1996); *United States v.*

*Simmons*, 154 F.3d 765, 770–71 (8th Cir. 1998). *See generally* Anup Malani, *The Scope of Criminal Forfeiture Under RICO: The Appropriate Definition of "Proceeds,"* 66 U. Chi. L. Rev. 1289 (1999).

Turning to the money laundering statute, the Seventh Circuit is alone in its restrictive definition of "proceeds." The Sixth Circuit has noted that "proceeds," as used in § 1956, is a "commonly understood word in the English language," and includes "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue." *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996) (quoting *Webster's Third New International Dictionary* 1807 (1971)). Similarly, the Ninth Circuit has adopted an expansive definition of "proceeds" as it is used in the money laundering statute, relying on dictionary definitions to assign it the "broad[] meaning of that which is obtained . . . by any transaction." *United States v. Akintobi*, 159 F.3d 401, 403 (9th Cir. 1998) (internal citation omitted).

Only one Circuit has explicitly considered the Seventh Circuit's decision in *Sciallaba*. In *United States v. Iacaboni*, 221 F. Supp. 2d 104, 112 (2002), *reversed in part on other grounds by* 363 F.3d 1 (1st Cir. 2004), the United States District Court for the District of Massachusetts rejected the Seventh Circuit's conclusion that proceeds should be interpreted as profits rather than total revenue. In March 2004, the First Circuit approved the District Court's reasoning, noting simply:

"We have previously rejected [Appellant's] interpretation of the term 'proceeds' in the RICO forfeiture context. [He] has offered no rationale for abandoning that approach here." 363 F.3d at 4 (citation omitted).

Given the many definitions of "proceeds" and the uncertain value of congressional records in choosing among them,[12] the best approach, we believe, is to examine the statute itself for indications of the intended scope of the term. The Seventh Circuit's opinion reasons that proceeds must be limited to net profits because money laundering is about concealment and only profits need be concealed. But the wording of the statute

suggests that concealment is only one of the statute's two purposes. The "normal understanding of money laundering" may entail "hid[ing] or invest[ing] profits in order to evade detection," as the Seventh Circuit posited, *Scialabba*, 282 F.3d at 476, but the bifurcated text of the statute strongly suggests that Congress had a broader definition of money laundering in mind.

To be sure, 18 U.S.C. § 1956 criminalizes financial transactions that satisfy the conventional understanding of money laundering—namely, transactions intended "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). But it is equally unlawful under the statute to engage in a financial transaction, knowing that the property involved represents the proceeds of unlawful activity, "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i). In other words, the money laundering statute prohibits not only the concealment of proceeds, but also the promotion of illegal activity. By reinvesting the proceeds of his fraudulent scheme in order to sustain it, Grasso promoted unlawful activity within the meaning of the statute—regardless whether the funds were profits or gross receipts.[13]

---

[12]Grasso presents extensive evidence that Congress intended the Money Laundering Control Act of 1986, of which § 1956 is part, "to fill the gap in the criminal law with respect to the post-crime hiding of ill-gotten gains." *United States v. Bockius*, 228 F.3d 305, 310 (3d Cir. 2000) (quoting *United States v. LeBlanc*, 24 F.3d 340, 346 (1st Cir. 1994)). "But that was not the sole purpose of the statute." *Id.* Other rationales undercut this theory. *See, e.g.*, *Iacaboni*, 221 F. Supp. 2d at 112 n.2 ("[The Seventh Circuit's interpretation would imply that] so long as the illegal enterprise had no net profit, no money laundering prosecution would be possible. Because Congress could not have intended such a result, the court follows the majority of circuits in holding that 'proceeds' should be interpreted as 'total revenue' rather than 'net profits.'").

---

[13]Because we believe the meaning of "proceeds" is clear from the text of § 1956, we need not consider the related policy

Finally, we note that we have explicitly rejected one of the principal factors cited by the Seventh Circuit in support of its construction of the statute. The Court commented in *Scialabba*: "If . . . the word 'proceeds' is synonymous with gross income, then we would have to decide whether, as a matter of statutory construction (distinct from double jeopardy), it is appropriate to convict a person of multiple offenses when the transactions that violate one statute necessarily violate another." *Scialabba*, 282 F.3d at 477 (internal citations omitted). Our Court, however, has concluded that § 1956 may subject an individual to multiple penalties based on the same crime without violating either double jeopardy *or* the principles governing statutory interpretation.

In *United States v. Conley*, 37 F.3d 970, 978–79 (3d Cir. 1994), we held that prosecution for both gambling and money laundering did not implicate double jeopardy because the statutory elements of the offenses differ; an individual is guilty of money laundering only if he or she *intended* to conceal or promote unlawful activity. The Seventh Circuit distinguished our decision in *Conley*, suggesting that if "proceeds" is interpreted broadly, the similarity between money laundering and the underlying criminal activity is problematic as a matter of statutory construction. But our Court has resolved the latter issue as well. In *United States v. Omoruyi*, 260 F.3d 291, 295 (3d Cir. 2001), we recognized that "conduct constituting the underlying offense conduct may overlap with the conduct constituting money laundering." An individual may be convicted for money laundering as long as the financial transactions are conducted with proceeds of the illegal transaction and with the intent to promote the underlying offense. *Id.*

We have regularly upheld money laundering prosecutions based on the reinvestment ("plowing back") of proceeds. *See, e.g.*, *United States v. Diaz,* 245 F.3d 294, 305 (3d Cir. 2001); *United States v. Cefaratti*, 221 F.3d 502, 511 (3d Cir. 2000); *Conley*, 37 F.3d at 972. And we have never suggested that proceeds must be net. We see no reason to adopt such a requirement now. We therefore hold that "proceeds," as that term is used in § 1956, means simply gross receipts from illegal activity. An individual may engage in money laundering regardless whether his or her criminal endeavor ultimately turns a profit.

arguments. We note, however, that various factors favor adoption of a broad definition of the term. For example, it would be very difficult to prove that "profits" were used to promote an illegal venture, since criminals rarely keep records of the overhead expenses of their illegal activities. Similarly, in an ongoing criminal business, it would be difficult to determine at what point a defendant had netted out all business expenses. When do criminal businesses operate by recognized auditing standards?

11

Thus we conclude that Grasso was properly convicted and sentenced for money laundering in violation of § 1956. In the context of our review standard, he has failed to establish error of any sort, let alone plain error.

## B. The District Court's Award of Restitution

We next address Grasso's contention that the District Court erred by ordering him to pay restitution because it failed to make factual findings in support of the award. We remand for clarification.

The context is that at the time of Grasso's sentencing, the Court ordered payment of $49,800 in special assessments, $180,000 in fines, $100,000 in counsel fees, and $761,126.39 in restitution to victims of Grasso's crimes.[14]

---

[14]18 U.S.C. § 3612(c) sets the priority for payments by defendants ordered at sentencing:

> Any money received from a defendant shall be disbursed so that each of the following obligations is paid in full in the following sequence:
> (1) A penalty assessment under section 3013 of title 18, United States Code.
> (2) Restitution of all victims.
> (3) All other fines, penalties, costs, and other payments required under the sentence.

*Id*. The District Court's judgment provided for the payment of special

According to the pre-sentence report, Grasso at one time had assets of $1,127,691.79, of which $900,000 was in "frozen funds." But because most of the frozen funds were in market-sensitive securities and brokerage funds, they fluctuated in value. Indeed, from the time of the pre-sentence report's calculation to the date of sentencing the funds' value had decreased by more than $200,000, resulting in an apparent shortfall for the payment of restitution.

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A–3664, enacted in 1996, requires a sentencing court to order full restitution to identified victims of certain crimes and to specify the manner and order in which restitution is to be paid. The MVRA amended the provisions for restitution set out previously in the Victim and Witness Protection Act, 18 U.S.C. § 3663 *et seq*., pursuant to which district courts had discretionary authority to award restitution and were required to consider such factors as the defendant's financial ability to pay. *See United States v. Coates*, 178 F.3d 681, 683 n.3 (3d Cir. 1999).

Under the amended provision, the discretion of a district court in awarding restitution is limited. *Coates* set out two steps for application of the statute. First,

---

assessments, fines, and counsel fees from the frozen funds, with the restitution ordered in Criminal No. 00-51 to be paid out of the balance. On remand, the order of payment should be reset per § 3612.

the court must order full restitution[15] "without consideration of the economic circumstances of the defendant." *Coates*, 178 F.3d at 683 (citing 18 U.S.C. § 3664(f)(1)(A)). Second, "[a]fter ordering full restitution, the district court 'shall specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid.' In so doing, the district court is required to consider the financial resources, projected earnings, and financial obligations of the defendant." *Coates*, 178 F.3d at 683 (citation omitted).[16] Clearly it makes no sense, when the mandatory restitution sums will be paid entirely from frozen funds, to require a district court to consider the defendant's financial resources and responsibilities. While in *Coates* we held that such determinations were necessary to satisfy § 3664's mandate, *id*., the defendant there had no frozen funds to which the restitution

claimants could look. We now hold that when frozen funds are adequate to satisfy restitution, a district court may stop short of *Coates*' second step. Here we have frozen funds. But we do not know their precise value, nor the number of claims to be satisfied. At the sentencing colloquy, the Government reported that the value of the frozen funds had decreased to $693,467.21, and counsel for Grasso explicitly noted that they would not cover the ordered expenditures.[17] We are

---

[15]Grasso's suggestion that a preliminary determination must be made whether each individual qualifies for restitution is plainly incorrect. Each individual who made a payment was "directly and proximately harmed as a result of the commission of the offense" within the meaning of 18 U.S.C. § 3663A(a)(2) and is consequently entitled to restitution.

[16]Thus, while full restitution is mandatory, "[t]he court may order the defendant to make a lump-sum payment, reasonable periodic payments, or, if the defendant is indigent, nominal periodic payments." *Id*. at 683–84.

---

[17]The transcript of oral argument contains the following confusing exchange:

> The Court: All right. Mr. Phillips, any reason you know of why this sentence I've just stated should not be imposed?
> Mr. Phillips: Your Honor, the only question I have had to do I guess with the items you listed, fine, restitution, attorney's fees, special assessment. When you add those numbers up, they're more than what is available of the frozen assets.
> The Court: That's correct. The balance goes to restitution.
> Mr. Phillips: Oh, it was the balance.
> The Court: Right.
> Mr. Phillips: Oh, okay. I'm—

13

therefore persuaded that a remand is necessary.

On remand, if the District Court should determine that the frozen funds are adequate to satisfy the full amount of restitution (after payment of $49,800 in special assessments), nothing further need be found to comply with the MVRA requirements. If, however, the funds are inadequate, the District Court should proceed in accordance with 18 U.S.C. § 3664(f)(2) to determine the manner in which, and schedule according to which, restitution is to be paid.[18]

> The Court: Whatever's left
> after those monies are paid
> is for restitution.

Arguably the District Court intended restitution to be paid only to the extent of the frozen funds. As § 3664 requires full restitution, however, this interpretation too would necessitate remand.

[18]Three additional issues bear consideration on remand. First, the Government contends that Grasso failed to claim that payment of $180,000 in fines impaired his ability to pay restitution and that he must therefore pay the fines from assets outside the frozen funds. In *United States v. Torres*, 209 F.3d 308, 312 (3d Cir. 2000), we noted that "the defendant has the burden of proving his or her ability to pay [fines]." Moreover, "[w]here . . . a defendant did not at sentencing raise the issue of his or her inability to pay, a sentencing court's decision to impose a fine and the amount of the fine is reviewed

for plain error." *Id*. at 313. Nonetheless, we were careful to note in *Torres* that the defendant had not argued that the District Court failed to consider his overall ability to pay a fine. Rather, he argued only that "the record before the District Court did not establish whether he had the earning capacity to pay a fine while on supervised release." *Id*. Applied to our case, if on remand there is determined to be a shortfall of funds available for fines (obviously the case if the funds are insufficient to pay restitution amounts), the District Court should consider Grasso's ability to pay this amount as well.

Second, it is apparent from the record that the District Court intended to order the payment of restitution to the 30,007 victims identified by the Government. The judgment, however, states that the restitution shall be paid to "any payees" identified by the Government. We presume that these payees are in fact the identified victims.

Finally, we note a discrepancy between the District Court's remarks during the sentencing colloquy and the payment terms set forth in the judgment. We glean from one statement by the Court at sentencing that it intended Grasso, upon his release from custody, to pay $100 per month toward any outstanding financial obligations. This provision, however, was not included in the written order. If on remand there is a shortfall to pay restitution, the Court should justify the schedule of payment by reference to Grasso's financial resources and

### III. Conclusion

Reviewing for plain error, we conclude that the District Court's interpretation of "proceeds" in the money laundering statute was correct, and we therefore affirm Grasso's conviction and sentence. On the issue of restitution, we vacate the District Court's order and remand for reconsideration in light of the value of the frozen funds. If the Court determines that those funds are inadequate to pay restitution in the priority scheme set by 18 U.S.C. § 3612, it should follow the requirements of 18 U.S.C. § 3664(f)(2).

---

obligations, pursuant to § 3664.