NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 25, 2018
Decided August 6, 2018

**Before**

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-1853

| | |
|---|---|
| EUGENE RILEY, III, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 13 C 8866 |
| STEPHANIE DORETHY, | |
|     *Defendant-Appellee.* | Rebecca Pallmeyer, |
| | *Judge.* |

## O R D E R

In this habeas corpus case under 28 U.S.C. § 2254, Eugene Riley challenges his Illinois conviction for felony murder predicated on mob action. He claims that the trial court infringed his Sixth Amendment right to have a jury determine each element of the offense by not instructing jurors that, for felony murder in Illinois, the State must prove that he had a "felonious purpose" independent of causing death and that the acts constituting the predicate felony (here, mob action) were not "inherent in" the victim's killing. He also argues that his attorney's failure to request these instructions was ineffective. Because the state appellate court reasonably held that the jury was correctly instructed, we affirm the judgment.

For his role in the death of Derrion Albert, Riley was sentenced to 32 years in prison. The state appellate court recounted the facts as follows. In September 2009, Chicago school closures caused high-school students living in the Altgeld Gardens Homes to attend Fenger Academy in a neighborhood referred to as "the Ville." Riley's brother, Vashion "BJ" Bullock, and cousin, Silvonus Shannon, were Altgeld students attending Fenger; Riley had graduated from a different high school.

One day Bullock was suspended and sent home early. Bullock and Riley later drove to Fenger to pick Shannon up, having heard a rumor that Shannon would be "jumped" after school. Soon after Shannon joined them, Riley stopped the car, and Bullock and Shannon got out to "exchange words" with someone in the street; Bullock testified that he had heard something hit the car window and was checking for damage. One way or another, a fistfight erupted, so Riley exited the car to help.

Riley testified that he was trying to defend Bullock, who was pinned to the ground, when he himself was hit with a board, making him dizzy, scared, and confused. Riley then picked up a board and hit Albert (the eventual murder victim) twice "because it was a reaction." Riley admitted that Shannon had been kicking Albert, who had his arms up for protection.

Eyewitnesses and cell-phone videos added detail. One video showed Riley hitting a man in a white shirt while another "young man wearing a red coat" hit and kicked Albert. Then Riley, Bullock, and an unidentified person squared off against a man holding a board, who swung at Bullock and then threw the board. Riley picked up the board. Two unidentified people kicked Albert as Riley ran over with the board and struck Albert twice.

Dominic Johnson, a student from the Ville, testified that Bullock had been suspended for fighting with another Ville student and that he (Johnson) "kind of" knew that there would be a fight after school. Johnson and friends were walking home when Bullock drove by and said, "[T]his ain't over," out the window. The car stopped and Bullock, Riley, and "other people" approached Johnson and his friends, starting a melee. Johnson saw Eric Carson, another student, knock Albert down with a board, and then one of Dominic's friends punched Albert in the head. Someone hit Bullock with a board; Shannon "stomped" on Albert, who was trying to protect himself; and Riley hit Albert with a board before the Ville residents chased away the Altgeld band.

A woman working for a nearby community center testified that she went for help after she saw "crowds of kids" about to fight. When she returned, she saw two young men assault Albert—one of them with a board. With another adult's help, the

woman pulled Albert to safety. An ambulance took Albert to the hospital, where he died of "cerebral injuries that were caused by blunt head trauma as a result of assault."

Riley, Shannon, and Carson were charged with Albert's death and tried separately. The trial court denied Riley's requests for involuntary-manslaughter and second-degree-murder instructions, and it declined to treat mob action and aggravated battery as lesser-included offenses. But the court did instruct jurors that they could convict Riley of felony murder "only if you also find the defendant guilty of mob action," which required him to "knowingly disturb[] the peace" by using force or violence. The jury found Riley guilty of felony murder predicated on mob action, 720 ILCS 5/9-1(a)(3) and 5/25-1(a)(1).

Riley appealed, arguing that the trial court did not properly instruct the jury on the elements of felony murder, that counsel was ineffective for not requesting the proper instructions, and that insufficient evidence supported his conviction. The appellate court rejected these claims and affirmed the conviction.

Riley then filed a timely § 2254 petition renewing his arguments that the jury instructions were constitutionally deficient and that counsel was ineffective. The district court denied relief. We certified an appeal and directed the parties to address *Evans v. Dorethy*, 833 F.3d 758 (7th Cir. 2016), regarding the jury-instruction issue.

Riley argues that the Sixth Amendment required the trial judge to instruct the jury that, under Illinois law, the State must prove that (1) the acts underlying the predicate felony (mob action) were not "inherent in" Albert's killing, and (2) Riley acted with a "felonious purpose" independent of murder. The two factors to which Riley refers derive from the Illinois Supreme Court's decision in *People v. Morgan*, 758 N.E.2d 813, 838 (Ill. 2001). Riley claims that the *Morgan* inquiry contributes new elements to the crime of felony murder. And because elements of the crime must be submitted to the jury, Riley argues that the trial court violated the Sixth Amendment by resolving those questions itself.

Riley's argument is foreclosed by our precedent. In *Evans v. Dorethy,* we held that the *Morgan* inquiry is "a legal assessment of the separateness of two events" that may be conducted by the trial judge, rather than a factual inquiry that must be submitted to a jury. 833 F.3d 758, 762 (7th Cir. 2016). Riley challenges that precedent as wrongly decided, yet he has not identified any "supervening developments" that cast new light on the matter. *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006). We remain bound by *Evans*, which means that we must deny Riley's application for a writ of habeas corpus. *See* 28 U.S.C. § 2254(d)(1).

Our holding in *Evans* was based on our understanding of Illinois law. If new legal developments later make clear that the Illinois Supreme Court is using the *Morgan* inquiry to add a judicially created element to the statutorily defined crime of felony-murder, it may be necessary for us to revisit the Sixth Amendment analysis in *Evans*. *Cf. People v. Space*, Nos. 1–15–0922 & 1–15–1171, 2018 WL 2104538 (Ill. App. Ct. May 4, 2018). As of this time, however, no such supervening developments have occurred.

Accordingly, we AFFIRM the district court judgment.