**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4632
_____

UNITED STATES OF AMERICA

v.

HAROLD FITZGERALD,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
District Court  No. 1-08-cr-00147-001
District Judge: The Honorable Leonard P. Stark

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 10, 2012

Before: SMITH, CHAGARES, and ALDISERT, *Circuit Judges*

(Filed:  September 13, 2012)

_____

OPINION

_____

Smith, *Circuit Judge*.

Harold Fitzgerald challenges his conviction by a jury on multiple counts related to a conspiracy to smuggle and sell drugs. We will affirm.[1]

Fitzgerald's involvement with his co-conspirators pre-dated the charged conspiracy. Robert Shepherd testified to Fitzgerald's close relationship with and performance of tasks for Andele Johnson, who purchased drugs from Vanivan Fuller, a dealer in Texas, and directed their sale in Philadelphia and the surrounding area. Fuller testified that he spoke frequently with Fitzgerald to coordinate shipments of drugs and money. After Johnson's arrest, his childhood friend Shepherd took over the operation. Shepherd testified that he often fronted cocaine to Fitzgerald because he repaid his debts. Bradley Torrence, who assisted Shepherd in the operation, testified that he sold Fitzgerald cocaine while Shepherd was out of town and that he did not require full payment because of Fitzgerald's close relationship with Shepherd.

This pre-conspiracy evidence demonstrates Fitzgerald's intent during his involvement in the charged conspiracy, which began in March 2006, following Torrence's arrest. During the charged conspiracy, Shepherd and Fitzgerald received shipments of cocaine from Fuller. Some of the cocaine belonged to Fuller. Shepherd and Fitzgerald were expected to sell it and ship the profits back

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

to him. The remainder was paid for in advance by Shepherd and Fitzgerald and belonged to them. Fuller testified that Fitzgerald informed him on multiple occasions that some of the cocaine belonged specifically to Fitzgerald, as Fitzgerald had used his own money to purchase it. Shepherd testified that he and Fitzgerald jointly scouted vacant apartments to which the packages of cocaine could be safely shipped and that Fitzgerald would generally retrieve the packages. Shepherd further testified that Fitzgerald would sometimes sell the packages directly, while on other occasions they would meet and divide the contents. Cash would then be sent back to Fuller. Shepherd and Fitzgerald would tell Fuller how much cash to expect. The payment would include Fuller's profits for his cocaine, as well as Shepherd's and Fitzgerald's payment for the next shipment.

Following Shepherd's arrest, Fitzgerald engaged in at least one more transaction with Fuller. Fuller testified that Fitzgerald met him in Tennessee and accepted two kilograms of cocaine in return for money Shepherd had paid Fuller just prior to Shepherd's arrest. Fitzgerald's travel to Tennessee is confirmed by phone records. The nature of the transaction is corroborated by a contemporaneous conversation Fuller had with Shepherd, which was recorded and played for the jury at trial.

Eventually, the conspiracy drew the attention of law enforcement. At trial, Special Agent Scott Duffy testified that the FBI took note of a pattern of packages

with similar features, namely the use of stolen corporate account numbers to pay for the shipment, similar origin and destination addresses, and similar delivery instructions. In August 2006, the FBI discovered that two packages fitting the observed pattern were in transit to locations in Delaware. Testimony by Fuller confirmed that he personally shipped those packages and that two or three kilograms of cocaine were contained in each package. DEA Task Force Officer Lawrence Collins testified that on August 24, 2006, he surveilled the first Delaware location, observed the delivery of a FedEx package, and then observed Fitzgerald enter the building and exit with a FedEx package. Robert Shepherd was present in his own vehicle, and the officer observed a brief meeting between the two. A similar delivery occurred two days later. Officer Collins and FBI Special Agent Michelle Taylor testified as to Fitzgerald's arrival at the package's destination and his eventual departure with the package. A note addressed to the FedEx driver and the FedEx door tag were retrieved from that location. Both bore Fitzgerald's fingerprints.

Fitzgerald was indicted and tried on four counts: Count I, conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846; Counts II and III, possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and Count IV, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. The jury convicted him on all counts.

4

This timely appeal followed. Fitzgerald raises six discrete issues that allegedly undermine his conviction. We will address each in turn.

First, Fitzgerald questions the sufficiency of the evidence as to his conviction on Count I, conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846. We exercise plenary review following denial of a Rule 29 motion for judgment of acquittal, but we apply the same standard as the District Court must apply following a jury conviction. *See United States v. Tyson*, 653 F.3d 192, 199 (3d Cir. 2011). Therefore, we will "sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *Id.* at 199 (quoting *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006)).

In this case, we have no doubt the evidence was sufficient to support the jury's verdict. The Government has presented evidence – including fingerprint evidence and direct observation by government agents – that Fitzgerald was personally involved in the retrieval of at least two packages containing substantial quantities of cocaine. It has presented shipping receipts and supporting testimony demonstrating frequent shipment of similar packages. Fitzgerald's co-conspirators have offered testimony as to his relationship and involvement with them before the conspiracy and his deep involvement in the conspiracy itself. Some of this evidence was corroborated by phone records and recorded phone conversations.

5

Fitzgerald cites our decision in *United States v. Gibbs*, 190 F.3d 188, 195 (3d Cir. 1999), and similar cases, and argues that he was in a mere "buyer-seller" relationship and not part of a larger conspiracy. But the evidence clearly satisfies *Gibbs* because it demonstrates that Fitzgerald "purchased drugs from the conspiracy and . . . knew that the individual from whom he purchased the drugs was part of a larger drug operation." *Id.* The evidence also goes well beyond *Gibbs'* requirements, demonstrating that Fitzgerald was not merely a peripheral player, but a core conspirator. Among other activities, he supplied his own money to purchase bulk quantities of drugs, coordinated shipments of drugs and money, scouted locations to receive shipments, and actually retrieved shipments himself. This is no mere buyer-seller relationship. It is, in fact, difficult to conceive of a more integral role.

Second, Fitzgerald questions the sufficiency of the evidence as to his conviction on Count IV, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. The Government presented evidence that Fitzgerald was involved in concealing money – both his own and money belonging to co-conspirators – and sending it to his supplier to receive additional drugs. Fitzgerald claims that movement or payment of money is a necessary component of participation in drug crimes. He contends that while it might constitute additional evidence of drug

6

crimes, this evidence is insufficient to sustain the independent charge of money laundering.

But money laundering includes knowingly conducting a financial transaction using the proceeds of unlawful activity "with the intent to promote the carrying on of . . . unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(A)(i). "We have regularly upheld money laundering prosecutions based on the reinvestment ('plowing back') of proceeds." *United States v. Grasso*, 381 F.3d 160, 169 (3d Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 945 (2005). The Government presented evidence that Shepherd, Fitzgerald, and their co-conspirators concealed and shipped large amounts of money across the country to facilitate the ongoing operation of the criminal conspiracy. Courts have recognized that "[p]ayment for drugs may constitute 'promotion' for the purposes of the money laundering statute when such payment encourages further drug transactions." *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999); *see also United States v. Bueno*, 585 F.3d 847 (5th Cir. 2009); *United States v. Krasinski*, 545 F.3d 546 (7th Cir. 2008); *United States v. Torres*, 53 F.3d 1129, 1137 n.6 (10th Cir. 1995).

Third, Fitzgerald questions the sufficiency of the evidence as to his conviction for Counts II and III, possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). These counts deal specifically with the packages Fitzgerald was observed retrieving from the two

7

Delaware locations in August 2006. Again, we will "sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *Tyson*, 653 F.3d at 199 (quoting *Flores*, 454 F.3d at 154). In addition, because Fitzgerald failed to preserve these objections before the District Court, we will reverse only if there was plain error. *See United States v. Barel*, 939 F.2d 26, 37 (3d Cir. 1991). As we have discussed, the Government has presented evidence – including fingerprint evidence and direct observation by government agents – that Fitzgerald was personally involved in the retrieval of the two packages. Fuller testified that he personally shipped them and that they contained two or three kilograms of cocaine each. Fitzgerald's knowledge of their contents can be inferred from his knowledge of the contents of similar packages shipped throughout the conspiracy. Given this evidence, there was no plain error in the jury's verdict.

Fourth, Fitzgerald challenges the District Court's refusal to declare a mistrial after Fuller testified: "I didn't want to agree [to cooperate with the Government], because I was in fear of my family being in danger and myself." We review "the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for an abuse of discretion." *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005). Fitzgerald claims that this statement prejudiced the jury to believe that Fitzgerald had threatened Fuller, and that Fuller was in fear for his life. We

disagree. Even standing alone, the statement is not prejudicial to Fitzgerald. It is natural that a drug conspirator would fear retaliation – from suppliers, co-conspirators, and any number of other sources – for cooperating with the police. Fuller does not state that *Fitzgerald* made him fear for his life, and the jury would not necessarily assume such a fact absent more information.

But Fitzgerald's challenge of his conviction on this point is not merely weak, it is frivolous. Fitzgerald's counsel challenged the statement at trial and requested a mistrial. The Government correctly suspected that the witness was in fact referring to his fear of retaliation from Mexican cartel members. The District Court wisely gave the Government the opportunity to "clean up" the testimony, and the Government did so. The witness further testified:

Q. Mr. Fuller, without necessarily going into specifics, where are you generally obtaining the cocaine that you were involved in distributing?
A. From the Mexican cartel.
Q. Do you consider those people to be dangerous people?
A. Yes, ma'am.
Q. When you referred to being afraid of retribution, were you afraid of those people?
A. Yes.

This clarifying testimony – which goes curiously unmentioned in Fitzgerald's brief – makes this challenge frivolous.

Fifth, Fitzgerald challenges the admission of evidence of a continuous relationship between himself and his co-conspirators. Fitzgerald asserts that the

9

pre-conspiracy evidence offered by the Government is inadmissible under Federal Rule of Evidence 404(b), which bars evidence offered to prove that a person committed a crime based on their propensity to commit similar crimes. But such evidence is admissible if it is intrinsic rather than extrinsic evidence, that is, if it is "part and parcel of the charged offense." *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). Intrinsic evidence is permitted because "there is no 'other' wrongful conduct at issue"; all the evidence offered is offered for the purpose of proving one of the elements of the charged offense. *Id.*; *see United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) ("[A]cts are intrinsic when they directly prove the charged conspiracy.").

The Government argues that the pre-conspiracy evidence offered here is intrinsic evidence, and thus admissible. We agree. "The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: '(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal.'" *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (quoting *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). Evidence of Fitzgerald's prior relationship with his co-conspirators and his active engagement in the same criminal conduct using the same methods supports the jury's conclusion that he shared with them a unified purpose of conducting a drug distribution conspiracy and an intent to achieve that goal, and that they worked

10

together to reach it. It also confirms that he was aware of the contents of packages he shipped and received.

Finally, Fitzgerald challenges whether there was sufficient evidence of conspiracy to admit the testimony of his co-conspirators. Statements "made by a party's coconspirator during and in furtherance of the conspiracy" are not hearsay, and are thus admissible as evidence. Fed. R. Evid. 801(d)(2)(E). In order for a court to admit such statements under Rule 801(d)(2)(E), the party seeking to offer the evidence must demonstrate: "(1) that a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. McGlory*, 968 F.2d 309, 333 (3d Cir. 1992). In determining whether the evidence is admissible, the court can consider the statements themselves. *Id.* at 334.

While Fitzgerald asserts that "the Government failed to demonstrate the first element under the . . . *McGlory* standard," Appellant's Br. at 38, it is clear that he is in fact challenging the second element of the standard, his involvement in the conspiracy. Fitzgerald offers no argument that Shepherd and Fuller did not engage in a drug distribution conspiracy; he offers no argument that the statements were not made; and he offers no argument that the statements were not made in furtherance of the conspiracy. Fitzgerald only challenges his involvement in the

11

conspiracy. *See id.* ("Mr. Fitzgerald never entered into anything more than a mere sales agreement with Mr. Shepherd and/or Mr. Fuller to purchase cocaine in an individual capacity."). But as we have detailed above, there was ample evidence to conclude that Fitzgerald was a knowing and active participant in the conspiracy.

For the foregoing reasons, we will uphold the jury's verdict and affirm Mr. Fitzgerald's conviction on all four counts.